IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KENNETH A. HOLLEY, | * |
| | * |
| Plaintiff, | * |
| v. | *   Civil Case No. RDB 05-1324 |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC. T/A SUPER FRESH, | * |
| | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Plaintiff Kenneth A. Holley ("Plaintiff" or "Holley") filed this action alleging that he worked in a racially hostile work environment that violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), while employed as an hourly produce clerk at Defendant The Great Atlantic & Pacific Tea Company, Inc., trading as, Super Fresh ("A&P" or "Defendant"). Pending before this Court is the Motion for Summary Judgment filed by Defendant A&P, which was submitted prior to any discovery in this matter. A&P asserts that judgment should be entered in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure, because, based on the undisputed material facts, Plaintiff's claims of hostile work environment do not rise to the level of severe or pervasive. Furthermore, A&P argues that it had effective anti-harassment policies in place and took immediate and appropriate action to prevent and correct any racially harassing behavior directed at Holley. Plaintiff contends that summary judgment is not appropriate because there are material facts in dispute. The issues have been fully briefed and no hearing is necessary. *See*

Local Rule 105.6 (D. Md. 2004). For the reasons stated below, A&P's Motion for Summary Judgment is GRANTED.

I. Background

The following facts are presented in the light most favorable to Holley, who opposes Defendant's Motion for Summary Judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Holley, who is African American, began working at A&P as a full-time hourly produce clerk at Super Fresh store #876 on September 27, 2002. Holley is currently employed by A&P at store #876, and during his tenure at the store he has been a member of the Local 27 of the United Food & Commercial Workers Union. Super Fresh is a retail grocery store and store # 876 is located in Timonium, Maryland. Around November 2003, Karl Steinmetz, who Plaintiff identifies as Caucasian, began working as a part-time produce clerk at store #876. Holley alleges that in November and December 2003, he was the target of race-based comments by Steinmetz. There is no allegation or any evidence that these comments were made in the presence of other employees, nor is there any allegation or evidence of any other employees making any such comments.

In November 2003, Holley alleges that Steinmetz made the following remark on one occasion when Holley was late arriving to work: "I guess black boys need their coffee in the morning to get up and come to work." (Compl. ¶ 12; Holley's Aff. ¶ 3.) Plaintiff complained to the store manager for store #876, William Snyder. (Holley's Aff. ¶ 4; Snyder's Aff. ¶ 3.) Snyder advised Holley that he would meet with Steinmetz to discuss the matter. (Compl. ¶ 12; Holley's Aff. ¶ 4; Snyder's Aff. ¶ 3.) On the day this alleged comment occurred, Ed Travers, A&P's Human Resources Manager, was at store #876 on other business. (Travers' Aff. ¶ 3;

2

Snyder's Aff. ¶ 4.)  Snyder advised Travers about the complaint from Holley.  (*See id.*)  Travers and Snyder met with Steinmetz, who denied making the remark to Holley.  (Travers' Aff. ¶ 8; Snyder's Aff. ¶ 6.)  Nonetheless, Travers and Snyder reviewed with Steinmetz A&P's Equal Employment Opportunity ("EEO") Policy and its Policy Against Harassment in the Workplace and informed Steinmetz that any harassing conduct would not be tolerated and could lead to his dismissal.  (*See id.*)

Plaintiff claims that in November 2003 Steinmetz also made a statement that "[t]his is not a store for black boys." (Compl. ¶ 14; Holley's Aff. ¶ 6.)  Plaintiff also states that in December 2003 Steinmetz yelled "fucking niggers" while loading some cheese in a cooler.  (Compl. ¶ 18; Holley's Aff. ¶ 11.)  Holley's affidavit attached to his Opposition to Defendant's Motion for Summary Judgment states that Steinmetz repeatedly referred to him as "nigger" and "asshole." (Holley's Aff. ¶ 5.)  Steinmetz denies making any of these comments.  (Steinmetz' Aff. ¶¶ 4, 6, 7.)  Holley states that he informed Snyder about these incidents, but that Snyder said nothing could be done because there were no witnesses.  (Holley's Aff. ¶ 7.)  However, Snyder attests that Holley made no further complaints to him after the one in November 2003 relating to the alleged comment made by Steinmetz concerning coffee.  (Snyder's Aff. ¶ 7.)  Donald Knudtsen, the produce manager at store #876, says that Holley never complained to him about offensive comments made by Steinmetz.  (Knudtsen's Aff. ¶ 3.)  Travers received no complaints from Holley about any other offensive comment, aside from the alleged statement concerning coffee. (Travers' Aff. 9.)

A&P has in place a Policy Against Harassment in the Workplace, an Equal Employment Opportunity Policy and an Internal Complaint Policy.  (Travers' Aff. ¶¶ 4 - 8).  These policies

3

are posted at A&P stores, including store #876.  (Travers' Aff. ¶ 4.)  The A&P EEO policy provides:

> An employee who believes that he/she is being denied, or has been denied, an equal employment opportunity, or has been a victim of retaliation should immediately report the matter to the local HR leader or through the procedures set forth in the Internal Complaint Policy.  All reports describing conduct that is inconsistent with the policy will be investigated promptly . . .  **VIOLATIONS OF THIS POLICY WILL NOT BE TOLERATED.  AN EMPLOYEE WHO VIOLATES THIS POLICY WILL BE SUBJECT TO DISCIPLINARY ACTION, INCLUDING DISCHARGE.**

(Def.'s Ex. 1.A) (emphasis in original). The A&P Policy Against Harassment in the Workplace provides:

> It is the policy of [A&P] . . . that all employees, customers and vendors have the right to work in or visit an environment free of harassment based on race, color, creed, religion, sex/gender/sexual orientation, age, marital status, national origin, disability, veteran status, or any other legally protected status.  Therefore, [A&P] shall take direct and immediate action to prevent such behavior and to remedy all reported instances of harassment.

(Def.'s Ex. 1.B.)  The A&P Internal Complaint Policy provides:

> Any employee with a complaint about discrimination, failure to accommodate, a violation of law or policy, retaliation, or other work-related complaint should contact the local Human Resources ("HR") Leader.  The current listing (with name, address, and phone number) is attached.  If an employee is uncomfortable complaining to his/her local HR Leader, the employee may complain to the Director, Associate Relations & Organizational Development at 2 Paragon Drive, Montvale NJ 07645, (201) 571-8337.  The employee may also pursue the complaint through the **NETWORK HOT LINE at 1-888-277-3258**.

(Def.'s Ex. 1.C) (emphasis in original).

On December 29, 2003, Snyder received a complaint from Steinmetz that the tires on both his car and that of his co-worker wife, Joanne Cress, were slashed while parked in the store's parking lot.  Upon further investigation, Snyder observed that there was a trail of blood leading from the cars to the store and into the employee lounge.  (Snyder's Aff. ¶ 8.)  Snyder

also observed that Holley had a fresh cut on his left hand. (Snyder's Aff. ¶ 8.) According to Defendant, Holley provided two explanations for the cut on his hand: The first explanation related to an alleged car accident involving his wife. Holley left the store early that day stating that he had received a call from his wife who had been in a car accident. (Snyder's Aff. ¶ 8.) However, prior to departing from the store Holley had told the produce manager, Don Knudtson, that he cut his hand trying to free his wife from her car and that the "jaws of life" were eventually used to extract her from her car, but that no police report of the accident was filed. (Knudtson's Aff. ¶ 2.) Holley later gave a different explanation for the cut on his hand. On January 2, 2004, after Snyder reported the situation to Cindy Michalkski of A&P's Loss Prevention Department, Michalkski interviewed Holley. (Michalkski's Aff. ¶ 4.) During the interview, Holley indicated that he had cut his right hand trying to separate two grocery carts. (Michalkski's Aff. ¶ 4.)

   Michalkski also reviewed videotapes of the store and the parking lot from December 29, 2003. (Michalkski's Aff. ¶ 4.) From her review of the tapes, she witnessed Holley leaving the store and heading toward Steinmetz' car and that of his wife. (Michalkski's Aff. ¶ 4.) She also saw that the tape showed Holley returning to the store and entering the employee lounge to wash and bandage his left hand. (Michalkski's Aff. ¶ 4.) After the interview and Michalkshi's review of the tape, Holley was suspended for, *inter alia*, failing to report a workplace injury. (Michalkski's Aff. ¶ 4.)

   On January 6, 2004, Holley, who was represented by a Union representative, was interviewed by Michalkski, Snyder, and Tavers about the tire slashing incident and the inconsistences in Holley's account of the events that occurred on that day. (Michalkski's Aff. ¶

5.) Based on this interview, the A&P representatives determined that Holley did not offer a satisfactory explanation of the events that took place on December 29, 2003. (Michalkski's Aff. ¶¶ 4-5.) At the conclusion of the January 6, 2004 interview, Holley was arrested by the Baltimore County Police Department and charged with criminal destruction of property. (Michalkski's Aff. ¶¶ 4-5.) A&P terminated Holley based on his arrest. (Michalkski's Aff. ¶ 5.) The criminal charges were later withdrawn or dismissed after the State's Attorney failed to provide appropriate discovery to Holley's defense attorney, specifically the A&P store videotapes from the date of the tire slashing incident. (Michalkski's Aff. ¶ 7.) Holley, however, states that he was acquitted after a trial. (Holley's Aff. ¶ 14.) This factual dispute is of no moment with respect to the pending motion for summary judgment.

Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on January 7, 2004, one day after his termination for the alleged tire slashing. After conducting a comprehensive investigation, including a Fact Finding Hearing, EEOC dismissed the charge on January 18, 2005. After the criminal charges against Holley were dismissed, A&P rehired him, effective May 8, 2004, and he remains an A&P employee. (Travers' Aff. ¶ 21.)

II.     Standard of Review

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." *Id.* at 249.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW.,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2740, at 399 (1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).  Indeed, this Court has an affirmative obligation to

prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

III.   Discussion

To establish a *prima facie* case of a racially hostile work environment, Plaintiff must demonstrate that: "(1) the harassment was unwelcome; (2) the harassment was based on his race . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998). As explained below, Holley's claim fails because, based on the undisputed material facts, he can show neither that the harassment was sufficiently severe or pervasive, nor that there is a basis for imposing liability on A&P.[1]

   A.   Severe or Pervasive Harrassment

The question of whether the degree of alleged hostility or abuse was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere actionable under Title VII is to be determined by examining the totality of the circumstances. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001). The United States Court of Appeals for the

---

[1] Although Holley makes a passing reference in his Opposition that discovery has not been completed, he did not provide a Rule 56(f) affidavit to the Court, nor did he state in his Opposition what discovery he believes is necessary to oppose A&P's motion. *See Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (noting that nonmoving party cannot complain that summary judgment was granted without discovery unless that party had sought, generally through a Rule 56(f) affidavit, to oppose the motion on the grounds that more time is needed to conduct discovery). In addition, Holley did not challenge or move to strike any of the Affidavits attached to A&P's Motion for Summary Judgment. *See, e.g., Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 718 (4th Cir. 1995) ("To the extent that these arguments may be seen as challenging the admissibility of these affidavits, we believe that OCF's failure to move to strike them below constitutes a waiver of these arguments.").

Fourth Circuit has recognized the following factors to aid in the determination of pervasiveness: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted." *Conner v. Schrader-Bridgeport Intern., Inc.*, 227 F.3d 179, 193 (4th Cir. 2000). In applying these factors, this Court has recognized that "[t]he standard for proving an abusive work environment is intended to be a very high one," *Jackson v. State of Maryland*, 171 F. Supp. 2d 532, 542 (D. Md. 2001), because the standard is designed to "filter out complaints attacking the ordinary tribulations of the workplace . . . ." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal citation omitted); *see also Nicole v. Grafton School*, 181 F. Supp. 2d 475, 484 (D. Md. 2003) (granting motion to dismiss Title VII hostile environment claim in part because alleged racial slur was not sufficiently "continuous and prolonged").

A violation of Title VII under the hostile work environment theory requires that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . .'" *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citation omitted)). In this case, Holley, a full-time produce clerk, complains that comments made by one part-time produce clerk, Steinmetz, created a workplace permeated with discriminatory insult so severe or pervasive as to alter his conditions of employment. There is no evidence that Steinmetz supervised Holley or held a more senior position than Holley. Holley does not allege that any racially charged comments were made by any other workers or by his supervisors.

9

While there are some inconsistences between Holley's Complaint and his Affidavit concerning the statements allegedly made by Steinmetz and his response to Steinmetz' actions, both refer to Steinmetz' alleged statement in November 4, 2003 that: "I guess black boys need their coffee in the morning to get up and come to work." (Compl. ¶ 12; Holley's Aff. ¶ 3.) It is undisputed that Holley complained to A&P management soon after this statement was allegedly made. Holley also claims that two other specific statements were made by Steinmetz. First, that Steinmetz, in November 2003, stated that "[t]his is not a store for black boys." (Compl. ¶ 14; Holley's Aff. ¶ 6.) Second, that in December 2003 Steinmetz used the work "nigger" after a disagreement over the placement of a cart loaded with cheese. (Compl. ¶ 18; Holley's Aff. ¶ 11.) Holley's Affidavit also makes the more general assertion that Steinmetz "*repeatedly* referred to me as 'nigger' and 'asshole'." (Holley's Aff. ¶ 5) (emphasis added). Holley argues that although the time period of the alleged harassment is brief, the discrimination was nonetheless pervasive and severe because so many alleged racially-charged incidents occurred within that time frame. Holley, however, has presented no corroborating evidence that these racially-charged statements occurred, or any allegation or evidence that these comments were made in the presence of other employees. Steinmetz simply denies making the statements.

A non-moving party can only survive a properly supported motion for summary judgment by "establishing the existence of a genuine issue of material fact." *Church v. Maryland*, 180 F. Supp. 2d 708, 715 (D. Md. 2002) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986)). However, unsubstantiated allegations and bald assertions will not carry the day for the employee. *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Goldberg v. B. Green*

10

*& Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (naked opinions and conclusory allegations are insufficient to withstand summary judgment). "[T]he non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find the facts in his favor." *Sylvia Dev't Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (internal citation and quotation omitted).

This Court finds that Holley has failed to present sufficiently probative evidence, having only presented a self-serving affidavit, that would permit a reasonable jury to find that he satisfied the third essential element of a hostile work environment claim - that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. This finding is supported by the fact that only one employee, a part-time coworker, allegedly made a handful of racially charged comments.[2] There is no allegation or any evidence that these alleged comments were made in the presence of any other employees or that any other employees made such comments. Furthermore, there is no evidence that Holley's conditions of employment were altered by one co-worker making such remarks. Although Holley was

---

[2] This Court granted an employer's motion for summary judgment with respect to the plaintiff's failure to promote claim, but denied summary judgment with respect to the plaintiff's hostile work environment claim in *Purnell v. Maryland*, 330 F. Supp. 2d 551 (D. Md. 2004). The plaintiff in that case was the only African American employee among a staff of 30-35. *Id*. at 554. There was evidence that for years multiple co-workers contributed to an allegedly hostile work environment and that her supervisor was aware of her concerns, inhospitable to her complaints, and contributed to the hostile work environment. In opposing summary judgment, Purnell put forth several pieces of evidence to demonstrate that there were genuine issues of material fact related to her hostile work environment claim. Based on the evidence presented, this Court determined that there were genuine issues of material fact that precluded summary judgment for Purnell's employer with respect to the hostile work environment claim. *Id.* at 562-63. The facts of this case are clearly distinguishable from the facts in *Purnell*.

terminated on January 6, 2003, as a result of his destruction of property arrest, he presents no probative evidence to indicate that he was terminated based on his race or on Steinmetz' accusations. Furthermore, A&P re-hired him and provided him with back pay once the criminal charges were resolved. (Travers' Aff. ¶ 21.)

  B. <u>Basis for Imposing Liability on A&P</u>

It is undisputed that Holley complained to A&P store management concerning the alleged November 4, 2003 statement made by Steinmetz that: "I guess black boys need their coffee in the morning to get up and come to work." There is undisputed evidence that A&P has various anti-discrimination policies in place, including an internal complaint policy of which Holley apparently was aware and utilized after the alleged November 4, 2003 statement. *See Matvia v. Bald Head Management*, 259 F.3d 261 (4th Cir. 2001) (noting that an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct harassment); *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) (same). In compliance with its EEO policy, its Policy Against Harassment in the Workplace, and its Internal Complaint Policy, Snyder and Travers met with Steinmetz to investigate Holley's complaint and to discuss these A&P policies. *See id.* The Fourth Circuit has held that "where an employer implements timely and adequate corrective measures after harassing conduct has come to its attention, vicarious liability should be barred regardless of the specific motivation for the wrongdoing or the particular cause of action." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Based on the undisputed evidence presented, A&P had anti-discrimination policies in place and took corrective action after Holley's November 3, 2004 complaint.

However, Holley's Affidavit states that Snyder did nothing after he complained to him about a later statement made by Steinmetz that "[t]his is not a store for black boys." (Holley's Aff. ¶ 6.) Snyder denies that Holley made this complaint. (Snyder's Aff. ¶ 7.) It is unclear from Plaintiff's submissions how many complaints he allegedly made about Steinmetz, when these complaints occurred, and to what extent Defendant responded to Plaintiff's complaint(s). However, it is Plaintiff's responsibility to come forward with probative evidence concerning these alleged complaints in order to avoid summary judgment. *See Sylvia Dev't Corp.,* 48 F.3d at 818. Holley's uncorroborated statements, in his self-serving Affidavit, are insufficient to create a dispute of material fact. *See id.* In sum, Holley has not presented evidence to permit a reasonable jury to conclude that there is some basis for imposing liability on A&P based on Steinmetz' conduct. There are simply no genuine issues of material fact and A&P is entitled to judgment as a matter of law.

IV   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. A separate Order will follow.


Date:   February 8, 2006                   _/s/_____
                                           Richard D. Bennett
                                           United States District Judge